**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

        -v-                                     **14-CR-102-A**

**GREGORY KWIATKOWSKI,**
                **Defendant.**
_____

**DECISION AND ORDER**

This case was referred to the undersigned by the Hon. William M. Skretny, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report on dispositive motions.

**PRELIMINARY STATEMENT**

Defendant, Gregory Kwiatkowski ("the defendant"), is charged, along with two others, in a five-count Indictment, with having violated Title 18, United States Code, Sections 241, 242 and 2.  Dkt. #1.  Presently pending is the government's motion seeking a determination of whether a conflict of interest exists in the present representation by Lipsitz Green Scime Cambria, LLP, of defendant Gregory Kwiatkowski, by Paul J. Cambria, Jr., as a result of the representation by Mr. Cambria's firm of a person identified as a victim in the Indictment.  Dkt. #6.  Counsel for defendant Kwiatkowski submitted a response to the instant motion.  Dkt. #10.  This Court heard oral argument on June 17, 2014.  For the following reasons, this Court concludes that the presumption of shared confidences has been rebutted and that while Mr. Stuermer's

involvement in the representation of Mr. Kwiatkowski would give rise to his disqualification, neither the law firm of Lipsitz Green Scime Cambria, LLP nor Mr. Cambria should be disqualified from representing defendant Kwiatkowski subject to the continued adherence to the screening devices that have been implemented.

## **FACTS**

On May 27, 2014, a Federal Grand Jury empaneled in the Western District of New York returned a five-count Indictment charging defendant Kwiatkowski with four counts of violating the civil rights of three persons, D.S., J.C., and D.D., and conspiring to violate the civil rights of those three persons, D.S., J.C., and D.D. and one other person, J.W.  The alleged victims in this case are identified in the Indictment by their initials.  The conduct charged in the Indictment occurred in the early morning hours of May 31, 2009.

Defendant Kwiatkowski appeared before this Court on June 2, 2014 for purposes of arraignment on the instant Indictment.  Attorney Paul J. Cambria, Jr., a senior partner at Lipsitz Green Scime Cambria, LLP, appeared with the defendant and advised the Court that he had been retained by the defendant to represent him in connection with this matter.  At the conclusion of the proceedings, counsel for the government advised the Court of a possible conflict of interest in Mr. Cambria's representation of defendant Kwiatkowski and further advised that counsel for the government and defendant Kwiatkowski would fully advise the Court of the nature of the conflict within one week's time.  The instant motion was filed on June 5, 2014.  Dkt. #6.

In an affidavit filed in support of the instant motion, Assistant United States Attorney Paul J. Campana states that he was contacted on May 28, 2014 by Paul J. Cambria, Jr. who advised that he was likely to be engaged that day as counsel for defendant Kwiatkowski.  Dkt. #6, ¶ 5.  During the June 17, 2014, oral argument on the instant motion, Mr. Cambria advised the Court that in the early afternoon on June 2, 2014, as he was preparing to leave his office to appear with the defendant at his 2:00 p.m. arraignment, Mr. Cambria explained that he encountered Michael P. Stuermer, also a senior partner at Lipsitz Green Scime Cambria, LLP.  During this brief encounter with Mr. Stuermer on June 2, 2014, Mr. Cambria stated during oral argument that he casually mentioned to Mr. Stuermer that he was on his way to Court for defendant Kwiatkowski's arraignment.  At that time, according to Mr. Cambria, Mr. Stuermer replied, that he thought he may have represented an individual in connection with the events charged in the Indictment.  As noted above, the Indictment only identifies the alleged victims by their initials.  Later, with the assistance of the United States Attorney's Office, Messrs. Cambria and Stuermer confirmed that in 2009, in connection with a local criminal matter pending in Buffalo City Court arising from the events that occurred on May 31, 2009, Mr. Stuermer represented the individual referred to in the Indictment as D.S.

The Court notes that at one time, Mr. Stuermer was engaged in the law firm's criminal defense practice area and routinely appeared before the undersigned in connection with criminal matters.  Although the Court cannot presently recall the last time Mr. Stuermer appeared before it in connection with a criminal matter, the Court can

say unequivocally that the frequency of Mr. Stuermer's appearances in connection with criminal matters has decreased significantly in recent years. Indeed, a review of the Lipsitz Green Scime Cambria LLP website reveals that the focus of Mr. Stuermer's practice has changed to automobile accidents, construction accidents, motorcycle accidents, premises liability, and workplace accidents. See http://www.lipsitzgreen.com/attorneys/stuermer-michael/.

In its motion, the government states that the alleged victim, D.S. and former client of Lipsitz Green Scime Cambria, LLP will be a witness in the government's case against defendant Kwiatkowski. In support of the instant motion, the government further states,

> [t]he government respectfully submits that one of the Court's concerns should be that Mr. Cambria's firm's prior representation of a prosecution victim/witness, in a trial where Mr. Cambria will be obligated to cross examine the former client (and present witness), would create the appearance of impropriety. It may limit Mr. Cambria's ability to cross-examine the victim, as that cross-examination could not address matters the victim discussed with the firm, without creating a further appearance of impropriety, i.e., the appearance that Mr. Stuermer revealed client confidences to Mr. Cambria and/or that Mr. Cambria failed to fully cross-examine the victim lest he interfere with the attorney-client relationship between the victim and Mr. Stuermer.

Dkt. #6, ¶ 9. Thereafter, on June 11, 2014, Assistant U.S. Attorney Paul Campana filed a Supplemental Affidavit in Support of Motion for Determination of Conflict of Interest. Dkt. #9. In that affidavit, AUSA Campana stated that, "on June 9, 2014, D.S. advised

the government that he would not waive any conflicts arising from Mr. Cambria's firm having previously represented D.S., and now having been engaged to represent defendant Kwiatkowski." Dkt. #9, ¶ 3.

In response to the instant motion, Mr. Cambria stated,

> To begin with, as an officer of the Court, I can affirm herein that I have no information from Mr. Stuermer's brief representation of D.S. in 2009; in that I did not substantively discuss the matter with Mr. Stuermer; and further I have not reviewed Mr. Stuermer's papers, notes or file regarding the matter. Our firm employs approximately fifty attorneys. The criminal department of our firm is busy; and handles a great many clients. It should surprise no one that I have obtained no information regarding Mr. Stuermer's brief representation of D.S., which occurred some five years ago. Further, I will not obtain any [sic] from Mr. Stuermer or his file.

Dkt. #10, ¶ 6. In addition to the foregoing, Mr. Cambria further advised the Court that once D.S.'s identity was confirmed for purposes of determining the existence of a conflict of interest, Lipsitz Green Scime Cambria, LLP "created a Chinese wall often used by the government in federal cases between government attorneys. The now-closed file is stored in a warehouse outside of the firm's four walls and I represent I have not and will not share any information with Mr. Stuermer or view such file." Dkt. #10, ¶ 7.

In a Declaration submitted in response to the instant motion, Mr. Stuermer confirms that he represented D.S. in May 2009 in a matter in the City Court of Buffalo

concerning charges resulting from the arrest of D.S. by defendant Kwiatkowski and other members of the Buffalo Police Department.  Dkt. #10-1, ¶ 2.  Mr. Stuermer further states,

> I have never discussed the substance of my representation of D.S. with Paul J. Cambria, Jr., Esq., who is one of my law partners at Lipsitz Green Scime Cambria.  Further, the file is now closed and stored in a warehouse outside of the firm.  It will remain there for the duration of Mr. Cambria's representation of the defendant.  I currently work in an entirely different department than Mr. Cambria on a different floor, and I will abide by the Chinese wall instituted within the firm regarding these two matters.
>
> I will continue to have no involvement with defendant Mr. Kwiatkowski in this matter, will not seek out any information regarding same, and will not volunteer any information to Mr. Kwiatkowski [sic] or to any other member of our firm that may be working on defendant Mr. Kwiatkowski herein.
>
> To my knowledge Mr. Cambria has never met D.S. nor spoken to him and there is no chance whatsoever that Mr. Cambria will obtain any information from me regarding D.S. or his case.

Dkt. #10-1, ¶¶ 3-5.

## **DISCUSSION AND ANALYSIS**

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.

> Implicit in this guarantee is the principle that, in most cases, 'a criminal defendant may be represented by any counsel who will agree to take his case.' *United States v. Cunningham*, 672 F.2d 1064, 1070 (2d Cir. 1982). The right to counsel of one's choice 'is not an absolute one,' however. *United States v. Ostrer*, 597 F.2d 337, 341 (2d Cir. 1979). The Sixth Amendment also embraces a right to effective assistance of counsel, which includes the right to be represented by an attorney who is free from conflicts of interest. *See Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981).

*United States v. Cain*, 671 F.3d 271, 293 (2d Cir. 2012).

> Attorneys owe a continuing duty to former clients not to reveal confidences learned in the course of their professional relationship. It is this duty that provides the foundation for the well-established rule that a lawyer may not represent a client in a matter and thereafter represent another client with interests materially adverse to interests of the former client in the same or a substantially related matter. Indeed, such "side-switching" clearly implicates the policies of both maintaining loyalty to the first client and of protecting that client's confidences. These same principles give rise to the general rule that, where an attorney working in a law firm is disqualified from undertaking a subsequent representation opposing a former client, all the attorneys in that firm are likewise precluded from such representation.
>
> In addition to ensuring that attorneys remain faithful to the fiduciary duties of loyalty and confidentiality owed by attorneys to their clients, the rule of imputed disqualification reinforces an attorney's ethical obligation to avoid the appearance of impropriety. Furthermore, it protects client confidences from

- 7 -

> misuse in substantially related and adverse litigation; frees the former client from any anxiety that matters disclosed to an attorney will subsequently be used against it in related litigation; and provides a clear and readily administered test, thereby encouraging self-enforcement among members of the legal profession.

*Kassis v. Teacher's Ins. & Annuity Assn.*, 93 N.Y.2d 611, 615-616 (1999) (internal quotations and footnote omitted).  As the New York Court of Appeals and Courts within the Second Circuit have repeatedly stated, the presumption of imputed disqualification may be rebutted.  *Kassis*, 93 N.Y.2d at 616; *Solow v. Grace & Co.*, 83 N.Y.2d 303, 309 (1994); *Cummin v. Cummin*, 264 A.D.2d 637, 639 (1st. Dept. 1999); *In re Del-Val Financial Corp. Securities Litigation*, 158 F.R.D. 270 (S.D.N.Y. 1994); *Lambert v. The Chase Manhattan Bank, N.A.*, No. 93 Civ. 1317, 1996 WL 66130 (S.D.N.Y. Feb. 15, 1996); *Papyrus Technology Corp. v. New York Stock Exchange, Inc.*, 325 F.Supp.2d 270, 279 (S.D.N.Y. 2004).

> A 'per se rule of disqualification,' we stated, 'is unnecessarily preclusive because it disqualifies all members of a law firm indiscriminately, whether or not they share knowledge of former client's confidences and secrets'.  Such a rule also imposes 'significant hardships' on the current client and is subject to abusive innovation purely to seek tactical advantages in a lawsuit.  Additionally, a per se disqualification rule 'conflicts with public policies favoring client choice and restricts an attorney's ability to practice.'

*Kassis*, 93 N.Y.2d at 616-17.  A determination of whether the presumption of shared confidences and disqualification has been rebutted turns on consideration of the particular facts of each case.

Where, for example, a disqualified attorney formerly worked in a small law firm characterized by a certain informality and conducive to " 'constant cross-pollination' " and a " 'cross current of discussion and ideas' among all attorneys on all matters which the firm handled," there will be a greater likelihood of acquiring material client confidences (*Cardinale v Golinello, supra,* 43 NY2d, at 292). Similarly, where offices are not physically isolated and files are made open and available to all lawyers, the probability that an attorney gained significant confidential information increases (*id.*).

Other factors also weigh in the balance. In *Solow,* for example, this Court declined to disqualify the law firm of Stroock & Stroock & Lavan, a 372-lawyer firm which represented plaintiff in a suit against defendant W.R. Grace & Co. Members of Stroock had previously defended Grace in another action, and Grace moved to disqualify the firm from participating in the action. While recognizing the importance of the presumption of shared confidences, the Court nevertheless permitted Stroock to continue as counsel against Grace, its former client. Aside from being a very large firm, the Stroock partner, associate and paralegals who actively participated in the litigation involving the former client had all left the firm long before the current litigation (*see, Solow v Grace & Co.,* 83 NY2d, *supra,* at 306). Sworn affidavits by the remaining partner and associate at Stroock established that their involvement in the prior Grace litigation had been negligible (*id.,* at 307).

Demonstrating that no significant client confidences were acquired by the disqualified attorney, however, does not wholly remove the imputation of disqualification from a law firm. Because even the appearance of impropriety must be eliminated, it follows that even where it is demonstrated that the disqualified attorney possesses no material confidential information, a firm must nonetheless erect adequate

>
> screening measures to separate the disqualified lawyer and eliminate any involvement by that lawyer in the representation (*see, Cheng v GAF Corp.,* 631 F2d 1052).

*Kassis*, 93 N.Y.2d at 617-18.

It is undisputed, Lipsitz Green Scime Cambria, LLP senior partner Michael Stuermer represented the individual identified in the instant Indictment as D.S. in connection with local charges stemming from the May 31, 2009 encounter with defendant Kwiatkowski and other members of the Buffalo Police Department. Equally undisputed is the fact that the incident giving rise to the charges in the instant Indictment arose out of the same May 31, 2009 encounter between D.S. and others and members of the Buffalo Police Department, including defendant Kwiatkowski. The government maintains that the individual identified in the Indictment as D.S. and formerly represented by Mr. Stuermer, will be a witness in the government's case against defendant Kwiatkowski. The parties have properly and timely brought this matter to the Court's attention and now seek this Court's determination as to whether there is a conflict of interest such that the entire Lipsitz Green Scime Cambria LLP law firm must be disqualified from representing defendant Kwiatkowski.

The law firm Lipsitz Green Scime Cambria LLP presently employs nearly fifty attorneys. Although at one time, as late as May 2009, attorneys Stuermer and Cambria both worked in the firm's criminal department, Mr. Stuermer now advises and

this Court has confirmed that he concentrates his practice on automobile accidents, construction accidents, motorcycle accidents, premises liability and workplace accidents.  Indeed, not only is Mr. Stuermer working in a different department, but his office is located on a different floor.  Mr. Stuermer has further advised that the file in connection with his 2009 representation of D.S. is now closed and stored in a warehouse outside of the firm and will remain in that location for the duration of Mr. Cambria's representation of defendant Kwiatkowski.  In connection with the instant motion, both Mr. Cambria and Mr. Stuermer state that they have not discussed Mr. Stuermer's representation of D.S. and further, Mr. Stuermer represents that he will have no involvement with defendant Kwiatkowski and will neither seek out information concerning defendant Kwiatkowski nor volunteer any information to any other member of the firm working on the instant matter.  Lastly, and not dispositive of the matter before this Court is the government's statement that D.S. has advised the government that he would not waive any conflicts arising from Mr. Cambria's firm having previously represented D.S. and now having been engaged to represent defendant Kwiatkowski.

There is no question that under the controlling law cited above, there exists the presumption of shared confidences within the Lipsitz Green Scime Cambria, LLP firm, as between Mr. Stuermer and Mr. Cambria.  However, this Court finds that Lipsitz Green Scime Cambria, LLP, specifically Mr. Cambria, has succeeded in rebutting that presumption.  As detailed in Mr. Cambria's Declaration submitted in connection with this matter and further discussed during the June 17, 2014 oral argument, as soon as the conflict was confirmed, Mr. Cambria took immediate steps to

implement screening measures to insulate himself from any improper acquisition of privileged or confidential communications concerning Mr. Stuermer's representation of D.S. Specifically, Mr. Cambria states,

> I have never nor will I view the file regarding the matter handled by Mr. Stuermer in 2009 and I have not nor will I have access to the file itself. I have never nor will I discuss the matter with Mr. Stuermer and I have never met nor discussed the matter with his previous client. Mr. Stuermer has had no involvement in the present case and will continue to be adequately screened from it, as he works in a different department on a different floor and as such he has had no opportunity to inadvertently acquire information about the current matter and nor have I.

Dkt. #10, ¶22. In addition to the foregoing, Mr. Cambria explains that he had a conversation with his client and advised him of his opportunity to discuss the matter with outside counsel. In connection with the instant motion, defendant Kwiatkowski submitted an affidavit wherein he expressed his understanding that he has the right to conflict-free representation and the effective assistance of counsel and he further stated,

> I understand that in May 2009, one of Mr. Cambria's law partners, Michael P. Stuermer, Esq., had represented government witness, D.S., in the Buffalo City Court case that was a product of my arrest of D.S. on May 31, 2009. I further understand that D.S. is expected to testify against me at my trial of this matter, the charges of which stem from my alleged actions during my arrest of D.S. on May 31, 2009.
>
> I also understand that Mr. Stuermer is not now, and will continue not to be, involved in the defense of my case, and he will not be

- 12 -

>   receiving or seeking out any information regarding my matter.
>
>   I understand that I may consult with an independent attorney outside of Mr. Cambria's firm, Lipsitz Green Scime Cambria, to discuss my waiving any conflicts, as well as the propriety of having Mr. Cambria continue on as counsel in this matter.
>
>   After consulting with my attorney herein, I hereby knowingly, intelligently and voluntarily waive any perceived or potential conflict of interest regarding the facts addressed above.

Dkt. #10-2, ¶¶ 3-6.

Here, the undisputed facts in the record are that Michael P. Stuermer was counsel to D.S. in connection with a Buffalo City Court matter that arose out of his May 31, 2009 arrest by defendant Kwiatkowski. Defendant Kwiatkowski's current counsel, Paul J. Cambria, Jr. had absolutely no involvement in the representation of D.S. With nearly fifty attorneys, Lipsitz Green Scime Cambria LLP is a medium-sized law firm in the Western District of New York. There is nothing in the record to suggest that Lipsitz Green could be characterized as a firm with a "certain informality . . . conducive to constant cross-pollination and a cross-current of discussion and ideas among all attorneys on all matters which the firm handled." *Kassis*, 93 N.Y.2d at 618. To the contrary, Mr. Cambria makes clear in his declaration, "[t]he criminal department of our firm is busy; and handles a great many clients. It should surprise no one that I have obtained no information regarding Mr. Stuermer's brief representation of D.S., which occurred some five years ago. Further, I will not obtain any from Mr. Stuermer or his file." Dkt. #10, ¶ 6. Moreover, because Mr. Stuermer's office and Mr. Cambria's office are on separate floors within the law firm and Mr. Stuermer's file is located in an offsite

storage facility, the possibility that either Mr. Cambria or Mr. Stuermer have or will gain significant confidential information is minimal. Finally, this Court concludes that the screening mechanisms presently in place are sufficient to ensure the absence of an actual conflict of interest and the appearance of impropriety.

## **CONCLUSION**

For the foregoing reasons, this Court concludes that the presumption of shared confidences within the law firm of Lipsitz Green Scime Cambria, LLP and specifically, between senior partners Paul J. Cambria, Jr. and Michal P. Stuermer has been rebutted and Lipsitz Green Scime Cambria, LLP and Mr. Cambria may continue their representation of defendant Kwiatkowski. The attorneys and staff at Lipsitz Green Scime Cambria, LLP are hereby directed to adhere to the screening mechanisms put into place and to ensure that neither Mr. Cambria nor Mr. Stuermer inadvertently obtain confidential information.

It is hereby **ORDERED** pursuant to 28 U.S.C § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statue, Fed.R.Crim.P. 58(g)(s) and Local Rule 58.2.

- 15 -

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

DATED:    June 30, 2014
          Buffalo, New York

                                        *s/ H. Kenneth Schroder, Jr.*
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**